
FILED
APR 10 2017
CLERK

| | |
|---|---|
| DONALD EAST,<br><br>    Plaintiff,<br><br>vs.<br><br>MINNEHAHA COUNTY, STATE OF SOUTH DAKOTA, MIKE MILSTEAD, JEFF GROMER, LIEUTENANT HICKS, LIEUTENANT AXSOM, CORPORAL THORSON, DR. KASTRE, DR. HEISLER, LINDA OSBORNE, JESSICA HOFFMAN, NURSE TAYDRA, DENNY KAEMINGK, DARIN YOUNG, ROBERT DOOLEY, LIEUTENANT LOEWE, MICHAEL JOE HANVEY, DR. BENJAMIN AAKER,<br><br>    Defendants. | 4:16-CV-04122-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION TO AMEND COMPLAINT, DISMISSING COMPLAINT IN PART AND DIRECTING SERVICE IN PART, AND DENYING MOTION TO APPOINT COUNSEL |

Plaintiff Donald East ("East") filed this lawsuit pursuant to 42 U.S.C. § 1983. Doc. 1. East is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. East amended his complaint once, Doc. 10, and this Court screened his amended complaint pursuant to 28 U.S.C. § 1915A, Doc. 11, dismissing it in part but allowing East's Eighth Amendment claim to proceed. For the following reasons, this Court now grants East's motion to amend his complaint anew, dismisses his complaint in part, directs service in part, and denies his motion to appoint counsel.

I.  **FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT**[1]

In March of 2013, while East was incarcerated in the Minnehaha County Jail (MCJ), he developed a blister on his toe from playing basketball. Doc. 17-1 ¶ 25. The blister eventually burst. *Id.* According to East, the resulting wound was not treated by jail medical staff even though East repeatedly warned them that it was getting worse. *Id.*

Between March and August of 2013, East's foot was examined by Dr. Heisler, the Primary Care Physician at MCJ. *Id.* ¶ 26. Dr. Heisler ordered only ointment and a cotex band wrap. *Id.* When Dr. Litsz replaced Dr. Heisler in August of 2013, Dr. Litsz allegedly told East his foot was infected and requested approval for him to be seen at Avera. *Id.*

In August of 2013, East went to Avera for treatment of his foot. *Id.* ¶ 27. He was prescribed Bactrim for the infection, but by this time, the infection was so severe that his symptoms got worse, even with the medication. *Id.* A doctor at Avera allegedly told East he should have been seen in June of 2013 at the latest. *Id.*

On September 4, 2013, East had an MRI done on his foot and was diagnosed with osteomyelitis of the fifth metatarsal and proximal fifth phalanx. *Id.* ¶ 28. Three weeks later, he had surgery to remove the fifth toe on his right foot. *Id.* ¶ 29. Before leaving the hospital, East had a PICC line put in his arm and was given two medications to kill any remaining infections. *Id.* ¶ 30.

---

[1] This Court makes no findings of fact at this point in the case. The matters set forth in this section are taken from the factual allegations pled in East's Second Amended Complaint, which this Court must take as true on initial screening.

East was told by nurse Amber at MCJ that he would only receive ibuprofen and Tylenol for pain rather than hydrocodone, as the hospital had ordered. *Id.* ¶ 31. East alleges that he was not allowed to shower for five days in a row because jail staff would not give him anything to cover his PICC line to keep it dry in the shower. *Id.* ¶ 32. He grieved this issue, but he was ignored. *Id.*

During his incarceration at MCJ, East's IVs were manually administered by nurse Linda Osborne. *Id.* ¶ 33. East claims that on numerous occasions, Osborne gave him too much medicine, which caused intestinal issues and excessive bowel movements, and she did not use gloves to administer his IVs. *Id.* ¶¶ 34-35. Osborne and nurse Jessica Hoffman also allegedly ignored East's complaints of severe pain. *Id.* ¶ 36.

On October 10, 2013, Hoffman and another nurse told East that his foot might have to be re-stitched and that it might be infected again. *Id.* ¶ 38. The same day, he saw Dr. Bipito who was worried that the PICC line was infected and told East he may have to go to Avera to get a new one. *Id.* ¶ 39. Nurses at Avera allegedly told East that Osborne was administering his IVs incorrectly and that he should come to Avera to have them administered. *Id.* ¶ 40.

Two days later, he was told by MCJ staff that he would not receive further pain medication because he was refusing medication. *Id.* ¶ 41. He grieved the issue to medical staff, telling them he had refused medication because he believed MCJ medical staff members were trying to kill him rather

3

than because he did not need the medication. *Id.* Osborne responded, denying the allegations. *Id.*

Later that day, East put extra socks on his foot because it was cold. *Id.* ¶ 42. When he told one of the private nurses at MCJ that he was having problems keeping his foot warm, she said he needed immediate medical help. *Id.* East was taken to Avera two hours later and stayed there for three days. *Id.* The nerves in his lower leg allegedly had stopped working; the doctors at Avera believed he was suffering from Raynaud's Disease. *Id.*

On October 15, 2013, East was seen by Dr. Litsz who prescribed Tylenol, ibuprofen, and Gabapentin (which East refers to as Gabby Penton in his second amended complaint). *Id.* ¶ 43. Dr. Litsz also requested that East receive his IVs at Avera. *Id.* According to East, Osborne yelled at him later that day, calling him a liar, saying nothing was wrong with his leg, saying she would administer his IVs, and ordering him to stop telling lies to his doctors. *Id.* He wrote a grievance to the Sergeant, Lieutenant, and Warden, telling them about the problems he was having with jail medical staff. *Id.* ¶ 44. Corporal Thorson responded, telling East that MCJ medical staff could administer his IVs. *Id.*

According to East, a number of problems occurred around this time with the administering of his IVs: Osborne stored his IV pole in a place where it could get contaminated, *id.* ¶ 45, East noticed his IV bag was expired, but when he pointed this out, nurse Taydra said it was fine, *id.* ¶ 46, East overheard Hoffman complaining that, because East had seen the IV bags were expired, MCJ now had to order new ones, *id.* ¶ 47, and MCJ staff began

4

administering his IVs in a dirty holding cell. *Id.* ¶ 48. East also met with Dr. Bipito who confirmed there was a minor infection in his PICC line. *Id.* ¶ 50.

On November 3, 2013, East had stomach pains and turned purple while MCJ medical staff were administering his IV. *Id.* ¶ 52. He was taken to the Avera Emergency Room. *Id.* When he was sent back to MCJ, he was put in lockdown by Taydra, even though he continued to be ill. *Id.* The next day, Dr. Litsz told East that his pain was from receiving too much medication and not eating enough food. *Id.* On November 6, 2013, East woke up with blood coming from his PICC line. *Id.* ¶ 53. He allegedly was not seen by medical staff for hours, and when he was, they merely wrapped a cotex band around it and told him to keep an eye on it. *Id.*

On November 7, 2013, his PICC line was removed, and he was placed in general population. *Id.* ¶ 54. East found this overwhelming and asked to be sent back to isolation, but MCJ staff denied this request. *Id.* A couple of days later, he was transferred to the Jameson Annex at the South Dakota State Penitentiary. *Id.* ¶ 56. During East's medical assessment before being incarcerated at the Jameson Annex, the doctor allegedly told him that he had Raynaud's Disease because of the mishandling of his PICC line. *Id.*

East alleges that he was sexually assaulted multiple times in the Jameson Annex. *Id.* ¶ 57. He reported this to Unit Manager Tammy Doyle and Special Security. *Id.* Special Security Lieutenant Loewe told him that they could not do anything about the assaults because they were not on camera. *Id.*

On June 30, 2015, East began experiencing pain in his right foot. *Id.* ¶ 58. His foot was swollen and red. *Id.* He was taken to the Avera Emergency Room, and there he was diagnosed with a cellulite infection. *Id.*

In September of 2015, East was still in pain. *Id.* ¶ 60. He had x-rays taken of his right foot, which showed a fracture. *Id.* East was immediately put in a walking boot. *Id.* In October of 2015, however, he saw Dr. Pederson at Avera who allegedly told him that he had been misdiagnosed. *Id.* ¶ 61. His foot was still fractured because he had been walking differently since his toe had been removed. *Id.* Dr. Pederson allegedly ordered East to be put in a cast and use a wheelchair. *Id.* Physician's Assistant Michael Joe Hanvey only allowed East to use the wheelchair for long distances and forced East to use crutches the rest of the time, allegedly saying that he did not care what Dr. Pederson ordered. *Id.*

On April 13, 2016, East had surgery to remove the main joint of the big toe on his right foot. *Id.* ¶ 62. He also had his bones fused together with a plate and pins. *Id.*

## II. PROCEDURAL BACKGROUND

On August 29, 2016, East filed his original complaint in this Court. Doc. 1. This Court ordered him to amend his complaint because he failed to name an identifiable defendant. Doc. 6. East amended his complaint, Doc. 10, and this Court screened it, dismissing it in part and directing service. Doc. 11. East now moves to amend his complaint for a second time. Doc. 17. He also again moves to be appointed counsel. Doc. 16.

## III. LEGAL STANDARD

At this stage of the case, this Court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

Under 28 U.S.C. § 1915A, this Court must screen prisoner claims filed in forma pauperis and determine whether they are (1) "frivolous, malicious, or fail[] to state a claim on which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." *See also Onstad v. Wilkinson*, 534 F. App'x 581, 582 (8th Cir. 2013).

## IV. DISCUSSION

### A. Motion to Amend Complaint

East moves to amend his complaint, Doc. 17, and provided a proposed second amended complaint. Doc. 17-1. "A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court . . . ." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citations omitted). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Motions to amend should be freely given in order to promote justice. *Plymouth Cty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2015).

East's second amended complaint raises similar claims to those in his original complaint. He appears to be attempting to cure the defects pointed out by this Court when it dismissed a number of his claims. Although most of those defects remain, East's second amended complaint contains much more detail and specificity for all his claims, including the one that survives. Further, defendants have not been served, and justice is served by granting East's motion. Therefore, this Court grants East's motion to amend his complaint a second time.

### B. Screening Pursuant to § 1915A

East raises six claims in his second amended complaint. He claims that defendants were deliberately indifferent to his serious medical needs. He claims

that defendants were negligent in providing him care, admitting him, and supervising their subordinates. He claims defendants violated his rights under the Prison Rape Elimination Act (PREA). Finally, he claims that defendants failed to incarcerate him in humane conditions.

### 1. Deliberate Indifference

East alleges that all defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs. "[A] prison official who is deliberately indifferent to the medical needs of a prisoner violates the prisoner's constitutional rights." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015). To state an Eighth Amendment claim, East must show "a substantial risk of serious harm to the victim," and "that the prison official was deliberately indifferent to that risk of harm . . . ." *Id.* at 861-62 (citing *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). The deliberate indifference element of this claim "has two components: an actor must 'know[] of and disregard[] an excessive risk to inmate health or safety.'" *Id.* at 862 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

#### a. Linda Osborne

East makes a number of allegations against Osborne. Many of the allegations concern Osborne's actions while administering his IVs. He alleges that he was given too much medicine, too quickly. Docket 17-1 ¶¶ 34, 37. He also alleges that Osborne administered the IVs in an unsanitary fashion. *Id.* ¶¶ 35, 45. East alleges that nurses at MCJ and at Avera told him that Osborne should not administer IVs in this way. *Id.* ¶¶ 40, 45.

9

East has alleged a substantial risk of harm and deliberate indifference on the part of Osborne. East was sent to the emergency room multiple times, and Dr. Litsz allegedly told him this was because of problems caused by the administration of his medications. *Id.* ¶ 52. When East was screened before being incarcerated in the Jameson Annex, the doctor allegedly told him that he had Raynaud's Disease because of mishandling of the PICC line. *Id.* ¶ 56.

East alleges that Osborne disregarded these possible harms. Osborne allegedly responded to a complaint from East by saying that his PICC line was not infected, *id.* ¶ 41, even though it was. *Id.* ¶ 50. Osborne allegedly disregarded East's complaints of severe pain, *id.* ¶ 36, and yelled at him, saying that he was lying, that nothing was wrong with him, and that the there was no problem with his IVs. *Id.* ¶ 43. East has stated an Eighth Amendment claim of deliberate indifference against Osborne.

### b. Jessica Hoffman

East alleges that Hoffman also administered the IVs in an unsanitary fashion and disregarded his complaints of severe pain. *Id.* ¶¶ 36, 37. The analysis applied to Osborne's actions also applies to Hoffman's actions. East has stated an Eighth Amendment claim of deliberate indifference against Hoffman.

### c. Dr. Heisler

East alleges that Dr. Heisler examined his foot between March and August of 2013. *Id.* ¶ 26. He alleges that Dr. Heisler ordered only ointment and

a cotex band wrap. *Id.* East alleges that this amounted to deliberate indifference to his serious medical needs.

East has alleged a substantial risk of serious harm. His foot needed treatment, a need shown by the fact that after the treatment was allegedly denied, his toe had to be removed. East also has alleged that Dr. Heisler was deliberately indifferent to this risk by not providing him with further care. When Dr. Litsz replaced Dr. Heisler in August 2013, she requested East be seen at Avera. *Id.* When East was seen at Avera, he was allegedly told he should have been seen in June of 2013 at the latest. *Id.* ¶ 27. During the time Dr. Heisler was working at MCJ, East further alleges that a nurse told him he needed to go to Avera, but she could not authorize it. *Id.* ¶ 26. East has stated an Eighth Amendment claim of deliberate indifference against Dr. Heisler.

### d. Michael Joe Hanvey

East alleges that Hanvey denied him the use of a wheelchair when he needed one. The substantial harm was clear; East already had a fractured foot and was in a cast. *Id.* at ¶ 61. Dr. Pederson also allegedly ordered East to use a wheelchair. *Id.* Yet, according to East, Hanvey disregarded this and forced East to use crutches. East has stated an Eighth Amendment claim of deliberate indifference against Hanvey.

### e. Accidental Actions

East alleges a number of incidences of mistreatment that he characterizes as accidents. These concern his IVs and medications. *Id.* ¶¶ 37, 40, 51. These do not constitute an Eighth Amendment violation. An accident

11

cannot be the basis of an Eighth Amendment medical claim because it does not constitute *deliberate* indifference. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Champion v. Kelley*, 495 F. App'x 769, 770 (8th Cir. 2012). Therefore, East fails to state an Eighth Amendment claim based on these alleged accidents.

### f. Specific Constitutional Amendment

East claims that these actions violated his rights under a number of constitutional amendments. Because claims that defendants have been deliberately indifferent to a prisoner's serious medical needs arise under the Eighth Amendment, East has stated claims under that amendment. To the extent that he seeks to recast these claims under other amendments, he fails to state a claim, and these claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

East also fails to state a claim of deliberate indifference against any other defendant other than those discussed above. These defendants are discussed further below. The Eighth Amendment deliberate indifference claims against these other defendants are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Negligent Care and Negligent Supervision

In Counts 2, 3, and 4, East claims that defendants violated his constitutional rights by negligently administering medical care and by negligently supervising their employees. As explained in this Court's previous order, negligence cannot be the basis of an Eighth Amendment claim for deliberate indifference to serious medical needs. *See* Doc. 11. East has failed to

cannot be the basis of an Eighth Amendment medical claim because it does not constitute *deliberate* indifference. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Champion v. Kelley*, 495 F. App'x 769, 770 (8th Cir. 2012). Therefore, East fails to state an Eighth Amendment claim based on these alleged accidents.

### f. Specific Constitutional Amendment

East claims that these actions violated his rights under a number of constitutional amendments. Because claims that defendants have been deliberately indifferent to a prisoner's serious medical needs arise under the Eighth Amendment, East has stated claims under that amendment. To the extent that he seeks to recast these claims under other amendments, he fails to state a claim, and these claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

East also fails to state a claim of deliberate indifference against any other defendant other than those discussed above. These defendants are discussed further below. The Eighth Amendment deliberate indifference claims against these other defendants are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Negligent Care and Negligent Supervision

In Counts 2, 3, and 4, East claims that defendants violated his constitutional rights by negligently administering medical care and by negligently supervising their employees. As explained in this Court's previous order, negligence cannot be the basis of an Eighth Amendment claim for deliberate indifference to serious medical needs. *See* Doc. 11. East has failed to

state a claim for negligent medical care or negligent supervision upon which relief may be granted.

In Count 3, East claims that MCJ defendants violated his constitutional rights in part by not following their own policies. "[T]here is no § 1983 liability for violating prison policy." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997); *see also Moore v. Rowley*, 126 F. App'x 759 (8th Cir. 2005). East fails to state a claim of negligent care or negligent supervision upon which relief may be granted, and these claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. PREA

East claims that Kaemingk, Dooley, Loewe, and the State of South Dakota violated his rights under PREA by failing to respond to his complaints of sexual assault and failing to develop and implement policies to properly administer PREA complaints. PREA does not create a private right of action enforceable by an individual civil litigant such as East. *Woods v. Hays*, No. 2:15CV13 CDP, 2015 WL 3645141, at *2 (E.D. Mo. June 10, 2015); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir.), *cert. denied*, 136 S. Ct. 238 (2015). Therefore, East fails to state a claim under PREA, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Right to Humane Conditions in Prison

In Count 6, East claims that defendants violated his right to humane conditions in prison. He seems to be referring to paragraph 63 of his second amended complaint in which he lists a number of alleged issues at Mike Durfee

State Prison. East does not allege any facts supporting these claims; he merely lists issues unrelated to the rest of his complaint. East fails to state a claim of a denial of the right to humane conditions, and his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Failure to Create Policy

Counts 4, 5, and 6 raise claims against defendants Mike Milstead, Warden Jeff Gromer, Dr. Kastre, Denny Kaemingk, Darin Young, and Robert Dooley for failing to develop and implement policies and practices in order to protect East's rights. Although these claims are dismissed for other reasons discussed above, East also fails to explain how the alleged failure to develop and implement policies and practices violated his rights. His allegations are merely conclusory: because his rights were allegedly violated, it must have been due to a failure of policy. Such conclusory allegations are insufficient to state a cause of action.

Further, East claims that MCJ defendants failed to follow their own policies. The policies are in place, according to East, but individual defendants failed to follow them, and their supervisors are liable for these failures. But defendants may not be held liable in a § 1983 claim based upon *respondeat superior*. *Williams v. Kelso*, 201 F.3d 1060, 1066 (8th Cir. 2000). Therefore, East fails to state a claim against these defendants, and his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Minnehaha County

East fails to state a claim against Minnehaha County. As explained in this Court's previous order, a county may only be held liable for a violation of constitutional rights if the violation was caused by its customs or policies. *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (quoting *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011)). As discussed above, East does not allege facts showing that the County's customs or policies were unconstitutional. Therefore, East fails to state a claim against Minnehaha County, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Hicks, Axsom, and Thorson

East alleges that Hicks, Axsom, and Thorson violated his constitutional rights. The only claim that survives screening, however, is East's Eighth Amendment claim of deliberate indifference to his serious medical needs. As Lieutenants and a Corporal at MCJ, these defendants have no medical expertise to provide East with medical care, adequate or otherwise.

East only mentions Hicks as one of the individuals who decided to put him in a holding cell to administer his IVs. This alone, because of Hicks' lack of medical expertise, is not enough to state a claim under the Eighth Amendment. East alleges that Axsom denied his request for a cover for his PICC line while in the shower. This only stopped East from showering for five days. It did not stop him from receiving medical care.

Finally, East alleges that Thorson responded to one of East's grievances about the medical staff. Thorson told East that MCJ medical staff could administer his IVs at the jail, and East did not have to be sent to Avera to receive his IVs. As a staff member without medical expertise, Thorson could rely on the medical staff's decisions concerning East's treatment. This does not constitute deliberately indifferent by Thorson. East fails to state a claim against Hicks, Axsom, and Thorson, and his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8. Dr. Benjamin Aaker

East alleges that Dr. Aaker violated his constitutional rights by misdiagnosing him. First, "Negligent misdiagnosis does not create a cognizable claim under § 1983." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). Second, East does not allege that Dr. Aaker is a state actor. " 'Only state actors can be held liable under Section 1983.' " *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (quoting *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)). East alleges that Dr. Aaker is a Doctor at Avera McKennan Hospital. Doc. 17-1 ¶ 23. He does not explain how Dr. Aaker's treatment was attributable to the state. Therefore, East fails to state a claim against Dr. Aaker, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C. Motion to Appoint Counsel

East again moves this court to appoint him counsel. Doc. 16. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a

civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, the court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claim. *Id.* The facts and nature of the case have not changed since this Court denied East's previous motion to appoint counsel. East's motion to appoint counsel is denied at this time.

### V. ORDER

Accordingly, it is ORDERED

1. East's motion to amend (Doc. 17) is granted. The clerks office shall refile Doc. 17-1, as East's amended complaint.

2. East's Eighth Amendment claims for deliberate indifference to his serious medical needs against Linda Osborne, Dr. Heisler, Jessica Hoffman, and Michael Joe Hanvey survive screening.

3. The remainder of the claims in East's second amended complaint are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

4. Defendants Minnehaha County, State of South Dakota, Mike Milstead, Jeff Gromer, Lieutenant Hicks, Lieutenant Axsom, Corporal Thorson, Dr. Kastre, Nurse Taydra , Denny Kaemingk, Darin Young, Robert Dooley, Lieutenant Loewe, and Dr. Benjamin Aaker are dismissed as defendants.

5. The Clerk shall send blank summons forms to East so he may cause the summons and complaint to be served upon the remaining defendants.

6. The United States Marshal shall serve a copy of the second amended complaint (Doc. 17-1), Summons, and this Order upon defendants. All costs of service shall be advanced by the United States.

7. Defendants will serve and file an answer or responsive pleading to the remaining claim in the second amended complaint on or before 21 days following the date of service.

8. East will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

9. East's motion to appoint counsel (Doc. 16) is denied.

Dated April 10th, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE